# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 7290 |
| | ) | |
| Mc DONALD'S CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Cirilo's Inc.'s ("Cirilo"), Defendant Cirilo McSween's ("McSween"), Defendant Olawale Oladeinde's ("Oladeinde"), and Defendant Hugo Ramos' ("Ramos") (collectively referred to as "Cirilo Defendants") motion for summary judgment. This matter is also before the court on Defendant McDonald's Corporation's ("McD Corporation") motion for summary judgment. For the reasons stated below, we grant both Defendants' motions for summary judgment.

# BACKGROUND

Plaintiff Edward Mosley ("Mosley") alleges that in June 2002 he began working for Cirilo as a permanent maintenance worker. Mosley was allegedly regularly assigned to a McDonald's restaurant ("Restaurant") on State Street in Chicago, Illinois, that is owned by Cirilo. McSween is allegedly the principal owner and president of Cirilo. Ramos was allegedly a manager at the Restaurant and Oladeinde (referred to in the amended complaint as "Mr. Wally") was allegedly the general manager at the Restaurant when Mosley worked there. Mosley claims that he experienced "work related injuries." (A. Compl. Par. 18(a)). In July 2004, Ramos allegedly notified Mosley that Mosley's work hours were going to be reduced because of Mosley's injuries. Mosley further alleges that Oladeinde and Ramos, "acting in concert with, and with [t]he approval of McDonald's Corporation and Cirilo's, Inc., intentionally and knowingly ordered that . . . Mosley[] wrongfully have [sic] his work-hours reduced because he was African-American (Black) race." (A. Compl. Par. 39). Mosley also claims that he suffered "racial harassment" and gender discrimination and that other maintenance workers with less seniority did not have their work hours reduced. (A. Compl. Par. 49-63, 123). Mosley includes in his *pro se* amended complaint claims alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

(Counts I and V), race discrimination claims based on violations of 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983") (Counts II and IV), Section 1983 equal protection claims (Count III), and intentional infliction of emotional distress ("IIED") claims (Count VI).

On December 6, 2006, the prior judge in this case granted in part and denied in part Defendants' motions to dismiss, dismissing the following claims: (1) all Section 1983 claims, (2) all IIED claims, (3) the Title VII gender discrimination claim brought against McD Corporation, and (4) the Title VII claims brought against the individual Defendants. (12/6/06 MO). Cirilo Defendants and McD Corporation subsequently moved for summary judgment. This case was reassigned to the undersigned judge on March 10, 2008.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000)

**DISCUSSION**

I. Local Rule 56.1

We first note that both Cirilo Defendants and McD Corporation have filed statements of material facts in accordance with Local Rule 56.1. On January 7, 2008, the court gave Mosley until March 17, 2008, to respond to Defendants' motions for summary judgment. The only response to Defendants' motions for summary judgment consists of two letters filed on March 13, 2008 ("March 13 Letter") and March 14, 2008 ("March 14 Letter"). Since Mosley is proceeding *pro se*, we construe the letters as his answer to the summary judgment motion. *See Myles v. United* States, 416 F.3d 551, 552 (7th Cir. 2005)(stating that "pleadings of *pro se* plaintiffs should be liberally construed"). Mosley did not file any response to Defendants' statements of material facts. Even though Mosley is proceeding *pro se*, the record reflects that, in accordance with Local Rule 56.2, he was sent the proper notice for *pro se* litigants explaining summary judgment motions. The Seventh Circuit has also indicated that *pro se* litigants are not absolved from the obligation to comply with Local Rule 56.1. *See, e.g., Greer v. Board of Educ. of the City of Chicago, Illinois*, 267 F.3d 723, 727 (7th Cir. 2001); *Delgado v. Board of Educ. of City of Chicago*, 2008 WL 343474, at *2 (N.D. Ill. 2008)(stating that "[a]lthough courts must construe *pro se* pleadings liberally, . . . a plaintiff's *pro se* status does not

absolve him from complying with these Local Rules"); *Banks v. Archer/American Wire*, 2005 WL 2007227, at *1 (N.D. Ill. 2005)(stating that a *pro se* litigant must comply with Local Rule 56.1). Further, the Seventh Circuit has held "that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating in addition that "[s]ubstantial compliance is not strict compliance"); *see also Chelios v. Heavener*, 2008 WL 746842, at *5 (7th Cir. 2008)(quoting *Koszola v. Bd. of Educ.,* 385 F.3d 1104, 1109 (7th Cir. 2004) for the proposition that the court has "emphasized the importance of local rules and ha[s] consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules"). Thus, in the absence of a response by Mosley to Defendants' statements of material facts, pursuant to Local Rule 56.1, all the facts contained therein are deemed to be undisputed. LR 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003). We also note that aside from the lack of a Local Rule 56.1 response, Mosley has failed in either the March 13 Letter or March 14 Letter to rebut the arguments or evidence pointed to by Defendants.

II. McD Corporation's Motion for Summary Judgment

McD Corporation argues that it is entitled to summary judgment on the Title

VII race discrimination and the Section 1981 claims brought against it.

### A. Title VII Race Discrimination Claim Brought Against McD Corporation

McD Corporation contends that Mosley's Title VII race discrimination claim brought against McD Corporation is based upon Mosley's initial misapprehension that McD Corporation was Mosley's employer. Mosley admits, pursuant to Local Rule 56.1, that McD Corporation was not Mosley's employer at the Restaurant. (R SF Par. 15-21). In addition, Mosley has not pointed to any evidence or presented any arguments showing that McD Corporation was his employer. Since Title VII prohibits conduct by employers against employees relating to employment matters and McD Corporation was not Mosley's employer, Mosley cannot prevail on the Title VII claim brought against McD Corporation. 42 U.S.C. § 2000e-2(a); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998)(indicating that a plaintiff could not sue a supervisor since the supervisor was not the plaintiff's employer). In addition, Mosley has not pointed to any evidence indicating any special relationship on the part of McD Corporation that could be a basis for liability under Title VII. *See Worth v. Tyer* 276 F.3d 249, 259-61 (7th Cir. 2001)(discussing special circumstances for Title VII liability).

Mosley has also not pointed to sufficient evidence to conclude that McD

7

Corporation took part in any of the discriminatory conduct alleged in the amended complaint. In fact, Mosley admitted at his deposition that the inclusion of McD Corporation on the initial complaint that Mosley filed with the Illinois Department of Human Rights was a "mistake." (11/16 Mos. Dep. 163). Mosley states in the March 13 Letter that he "[b]elieve[s] that the court should make McDonalds [sic] corporation [sic] liable" because "[t]hey also knew about [Mosley's] situation and did nothing to help" him. (3/13 Lett. 1). However, Mosley fails to provide any legal support for his contention that McD Corporation should be held liable in this case or to show that McD Corporation owed any legal obligation to Mosley. Mosley admitted at his deposition that McD Corporation was not his employer and never "told [him] what to do when [he was] working." (11/16 Mos. Dep. 146-47). Mosley also contends that McD Corporation should be liable because Mosley wore a McDonald's uniform. However, Mosley has failed to show how wearing the uniform made McD Corporation legally obligated to Mosley. Therefore, we grant McD Corporation's motion for summary judgment on the Title VII race discrimination claim.

B. Section 1981 Claim Brought against McD Corporation

McD Corporation moves for summary judgment on the Section 1981 claim

brought against it. Section 1981 provides the following:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. In the instant action, the undisputed facts show that McD Corporation was not Mosley's employer. In addition, Mosley has not pointed to any evidence that shows that McD Corporation interfered with Mosley's right to make contracts or any of the other rights listed in Section 1981. The only part of the record that makes any reference to a Section 1981 claim is Mosley's conclusory references to the claim in the allegations in his complaint. Therefore, we grant McD Corporation's motion for summary judgment on the Section 1981 claim brought against it.

III. Cirilo Defendants' Motion

Cirilo Defendants move for summary judgment on the remaining claims brought against them. The Seventh Circuit has applied the same summary judgment analysis to Title VII and Section 1981 claims. *See, e.g., Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007)(stating that the court has generally "applied

9

the same prima facie requirements to both Title VII and § 1981 discrimination claims"); *Alexander v. Wisconsin Dept. of Health and Family Services*, 263 F.3d 673, 682 (7th Cir. 2001)(stating that "[a] plaintiff alleging race discrimination under Title VII and § 1981 can prove such discrimination either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*"). A plaintiff bringing a Title VII discrimination claim or Section 1981 claim can defeat a defendant's motion for summary judgment under the direct method of proof or the indirect method of proof. *Scaife v. Cook County*, 446 F.3d 735, 739-40 (7th Cir. 2006).

### A. Direct Method of Proof

Under the direct method of proof, a plaintiff must establish a discriminatory motivation through direct or circumstantial evidence. *Rudin v. Lincoln Land Cmy. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Direct evidence of discrimination would constitute "an admission by" the defendant that the adverse employment action was taken "on the basis of" his membership in a protected class. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). A plaintiff can also present circumstantial evidence under the direct method of proof, but such evidence must be sufficient to

10

create "a triable issue of whether the adverse employment action of which [the plaintiff] complains had a discriminatory motivation." *Rudin,* 420 F.3d at 721 (quoting *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997)). The Seventh Circuit has also indicated that one way that circumstantial evidence can create a triable issue is if there is a "'convincing mosaic of discrimination against the plaintiff.'" *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 666 (7th Cir. 2006)(quoting *Walker v. Bd. of Regents of Univ. of Wis.*, 410 F.3d 387, 394 (7th Cir. 2005)).

In the instant action, Mosley has failed to point to direct evidence of unlawful discrimination. In addition, Mosley has failed to point to sufficient circumstantial evidence of such discrimination. For instance, Mosley contends that "another black guy" was fired at the Restaurant and "over twelve Hispanic people" were hired "right in [his] face." (C SF Par. 27). Mosley also claims that Ramos "'had a chuckle in his face' when communicating his decision to [Mosley] about reducing his work hours." (C SF Par. 28). However, even when considering all of the evidence pointed to by Mosley in his filings and deposition in its totality, such evidence is not sufficient to indicate that Cirilo discriminated against Mosley because of his race or gender. It is undisputed that Mosley described his relationship with Ramos and Oladeinde prior to Mosley's hour reduction as a "good relationship." (C SF Par. 12); (11/16 Mos. Dep.

183). It is also undisputed that on July 2, 2004, Mosley "refused to dispose of the garbage as Ramos had instructed, forcing Ramos to direct another employee to perform [Mosley's] responsibilities." (C SF Par. 19). It is also undisputed that Ramos and Oladeinde decided "to reduce [Mosley's] work hours because [Mosley] was not performing all of his duties, including disposing of the garbage." (C SF Par. 24). Thus, Mosley has failed to point to sufficient evidence to proceed under the direct method of proof.

### B. Indirect Method of Proof

Under the indirect method of proof a plaintiff must first establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations at the time of the alleged adverse action; (3) he was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably." *Scaife,* 446 F.3d at 739-40. Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse action. *Id.* at 739. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a pretext for unlawful discrimination. *Id.* at 739-40.

12

### 1. Meeting Employer's Legitimate Expectations

Cirilo Defendants contend that undisputed evidence shows that Mosley was not meeting Cirilo's legitimate expectations. As indicated above, it is undisputed that on July 2, 2004, Mosley "refused to dispose of the garbage as Ramos had instructed, forcing Ramos to direct another employee to perform [Mosley's] responsibilities." (C SF Par. 19). It is also undisputed that Ramos and Oladeinde decided "to reduce [Mosley's] work hours because [Mosley] was not performing all of his duties, including disposing of the garbage." (C SF Par. 24). Mosley also does not dispute that "Oladeinde often observed during his visits to the store that [Mosley] spent more time socializing with customers in the lobby than actually performing his work duties." (C SF Par. 42). Mosley also testified at his deposition that he got in an argument at work with another employee at another store that almost resulted in a physical altercation. (11/16 Mos. Dep. 177). Thus, Mosley has failed to show that he was meeting his employer's legitimate expectations.

### 2. Similarly-Situated Employees

Cirilo Defendants argue that Mosley has failed to point to a similarly situated employee outside the protected class who was treated more favorably. Mosley states

only generally in the March 14 Letter that "[n]o employee has ever worked three hours a day but" him. (3/14/ Lett. 2). Mosley does not identify any similarly situated employee in either the March 13 Letter or the March 14 Letter. We note that Mosley mentions in his amended complaint that "similarly situated, non-handicapped maintenance persons, such as Marros, Jose, and Javier (last names unknown) and others , . . . ha[d] less seniority than [Mosley], and ha[d] levels of work performance which [were] similar to [Mosley], but they have not experienced a reduction for work hours as" Mosley has. (A. Compl. Par. 63). However, Mosley has failed to show that the employees were similarly situated in regards to their conduct, supervisors, or other factors that the Seventh Circuit indicates should be considered to make such a determination. *See Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 688 (7th Cir. 2007)(stating that the similarly-situated element requires a plaintiff to show "that the employees shared the same supervisor, performance standards, and 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'")(quoting in part *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). Mosley also admitted at his deposition that his beliefs concerning appropriate similarly situated employees were based upon speculation. (C SF Par. 34-36).

In addition, Mosley cannot rely on mere allegations in his amended complaint at the summary judgment stage concerning alleged similarly situated employees. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)(stating that "summary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events'")(quoting in part *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007)(stating that at the summary judgment stage "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial"). Thus, Mosley has failed to identify a similarly situated employee outside the protected class who was treated more favorably than him.

### 3. Legitimate Non-Discriminatory Reason and Pretext

Cirilo Defendants contend that Mosley's job hours were reduced because of his poor work performance and thus Cirilo Defendants have offered a legitimate non-discriminatory basis for the employment action. In turn, Mosley has not pointed to sufficient evidence to show that Cirilo Defendants' reason for the action was a pretext. Mosley, has only made allegations such as that Ramos "chuckled" in the

15

face of Mosley, but Mosley has not shown how such conduct is tied to an animus against Mosley because of his race or gender. Mosley asserts that McSween showed an animus against Mosley when McSween allegedly told Mosley once to leave the Restaurant until his shift began. (C SF Par. 39). However, it is undisputed that Cirilo "does not allow employees to loiter about in the store when they are not working - unless they are visiting the store as a customer." (C SF Par. 40). Mosley admits that "McSween, Oladeinde, and Ramos . . . never made derogatory comments to him regarding his case. . . ." (C SF Par. 37). Mosley, in fact, does not dispute that his hours were reduced due to his poor work performance. (C SF Par. 24). Mosley also admits that until the employment action was taken against Mosley, he had a "good relationship" with both Ramos and Oladeinde. (11/16 Mos. Dep. 183). Thus, Mosley has not pointed to sufficient evidence to show that Cirilo's reason for Mosley's hour reduction was a pretext. In addition, we separately note that Mosley has not pointed to sufficient evidence for a reasonable trier of fact to conclude that any of Cirilo Defendants interfered with any of Mosley's rights enumerated in Section 1981. Based on the above, we grant Cirilo Defendants' motion for summary judgment on the Title VII and Section 1981 claims brought against Cirilo Defendants.

## CONCLUSION

Based on the foregoing analysis, we grant McD Corporation's motion for summary judgment in its entirety and we grant Cirilo Defendants' motion for summary judgment in its entirety.

```
                                   _____
                                   Samuel Der-Yeghiayan
                                   United States District Court Judge
```

Dated:   April 25, 2008